UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EVELYN CARDONA CRUZ,<br>Plaintiff | ) | |
| | ) | Civil Action |
| V. | ) | |
| | ) | No. C.A. 05-336-S |
| BLOCK ISLAND PARASAIL, INC.,<br>Defendant | ) | |

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff and opposes the Defendant's motion to dismiss on the grounds that the Court cannot find that it is a legal certainty that the Plaintiff will not recover a minimum of $75,000 in this matter. If, however, the Court does find that it is a legal certainty that the Plaintiff will not recover at least $75,000 in this case, the Plaintiff respectfully requests that she be permitted to amend her Complaint to allege maritime jurisdiction pursuant to Article III, §2, of the United States Constitution and 28 U.S.C. §1333.

WHEREFORE, the Plaintiff respectfully requests that:

A. The Defendant's motion be denied in its entirety, or

B. That, alternatively, the Plaintiff be permitted to amend her Complaint to allege maritime jurisdiction pursuant to Article III, §2, of the United States Constitution and 28 U.S.C. §1333.

Evelyn Cardona Cruz
By her attorneys,

Stephen G. Linder (#0696)
LAW OFFICE OF STEPHEN G. LINDER
155 South Main Street, Suite 303
Providence, RI 02903
401-521-6800

CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was sent this date via first class mail to all counsel of record.

Stephen G. Linder (#0696)
LAW OFFICE OF STEPHEN G. LINDER
155 South Main Street, Suite 303
Providence, RI 02903
401-521-6800

Dated: 9/21/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EVELYN CARDONA CRUZ,<br>Plaintiff | ) | |
| V. | ) | Civil Action |
| BLOCK ISLAND PARASAIL, INC.,<br>Defendant | ) | No. C.A. 05-336-S |

MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

## I. FACTS.

In this case, the Plaintiff suffered a torn anterior cruciate ligament (ACL) in her left knee as a result of the accident in question on August 10, 2002. She had immediate pain and swelling of the knee and sought immediate medical attention. She had difficulty walking, and could not fully bend or straighten her left leg. Exhibit A, Affidavit of Evelyn Cruz. She underwent ACL reconstruction surgery just over a month later, on September 17, 2002. She had formal physical therapy both before and after her surgery, and treated with her surgeon for over a year post-surgery. She was finally discharged from care on October 17, 2003, but was advised to continue with home exercises. At that time, her surgeon, Dr. Murray, assigned her a 10% permanent impairment rating of the left knee.

She was on crutches from the day of the accident until about 3 or 4 weeks after the surgery. After she got off the crutches, she had a severe limp for about 5 weeks. She had a serious problem with using stairs for about 6 months after surgery. Currently, she still has occasional pain with going down stairs. Exhibit A.

Before the accident, she was in volleyball and bowling leagues, and also sometimes jogged and played basketball. She was forced to stop all of those activities after the injury, and has not started again because of pain in her left knee. She also had problems during her recent pregnancy. When she was pregnant with her now 10 month old son, she had difficulty bearing weight on her left leg. She still makes sure to carry her son on her right side because she is uncomfortable putting his weight on her left side because she fears that her left knee will give way. She has also postponed having another child as a result of this incident. She and her husband have wanted to have a third child, but she has been so concerned with her knee potentially giving way that they have decided not to have another child for the time being. Exhibit A.

As a result of the surgery, she has a scar on her left knee. Exhibit A. She is extremely bothered by the scar, and it has caused her mental pain and suffering. Exhibit A.

She still have pain and other problems in her knee. She still cannot kneel on bare floor unless she puts some type of cushion on the floor. She has not been able to play with her children as she would have liked. She still has pain and some stiffness in the afternoons and evenings. She has had and still feels a popping sensation in her knee up to a couple times a day. When this happens, it is very uncomfortable, and she feels like her knee is going to give way. Exhibit A.

As of the time of the accident, she was (and still is) employed at Bloomfield (CT) High School as a data entry clerk, earning $15.11 per hour (35 hours per week) at the time of the accident. Exhibit A. As a result of the accident, she was unable to work for approximately 5-6 weeks. Exhibit A. This results in a claim for lost earnings of $3,384.72. She incurred

$11,120.22 of medical bills as a result of the accident, for total liquidated damages of $14,504.94.

## II. THE PLAINTIFF HAS MET HER BURDEN OF PROVING JURISDICTION.

The Defendant has moved to dismiss, contending that the damages in the matter in controversy will not exceed $75,000, and that the Plaintiff cannot meet her burden of proof on this issue. The law on this issue is well settled.

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 590 (1938). When jurisdiction is challenged, it is the plaintiff's burden of showing that "it is not a legal certainty that the claims will not result in a verdict for the amount in controversy." Ortega v. Star-Kist Foods, Inc., 370 F.3d 124, 128 n. 1 (1st Cir. 2004), reversed on other grounds sub nom, Exxon Mobil Corp. v. Allapatah Servs., 125 S.Ct. 2611 (2005). While "no presumption of truthfulness attaches to the [Plaintiff's] allegations," D'Amato v. Rhode Island Hospital Trust National Bank, 772 F.Supp. 1322, 1324 (D.R.I. 1991), the Plaintiff will be given the "benefit of the doubt on all matters where there is an issue of credibility." Duchesne v. American Airlines, Inc., 758 F.2d 27, 28 (1st Cir. 1985), citing Jimenez Puig v. Avis Rent-A-Car Systems, 574 F.2d 37, 40 (1st Cir. 1978); King v. York Golf and Tennis Club, 230 F.Supp.2d 123, 124 (D. Me. 2002). "Provided a plaintiff's claims are 'colorable,' the court's inquiry does not focus on their probable success but rather on 'whether to anyone familiar with the applicable law [the] claim could objectively have been viewed as worth' the jurisdictional minimum." Evans v. Yum Brands, Inc., 326 F.Supp.2d 214, 221 (D.N.H. 2004), citing Jimenez Puig, supra.

The First Circuit in Duchesne addressed the difficulty in analyzing whether a litigant has met the jurisdictional minimum in tort cases, stating that "the problem in a tort case such as this one, involving a substantial claim for pain and suffering, is that it is very difficult to 'be legally certain' that the jurisdictional limit is not met." Duchesne, supra, citing Wright, Miller & Cooper, Federal Practice and Procedure §3707, at 464 (1976); see also Smith v. Kmart Corp., 177 F.3d 19, 33 n. 5 (1st Cir. 1999) ("converting feelings such as pain and suffering and the loss of enjoyment of life into dollars is not an exact science"); Turner v. Wilson Line of Massachusetts, Inc., 242 F.2d 414, 419 (1st Cir. 1957) ("The amount of money appropriate as compensation for pain and suffering cannot be determined by any precise measure or rule. Judgment in this field is necessarily subjective and must rest upon an evaluation of the severity of the pain suffered, its duration and its mental consequences."). Other courts have agreed. E.g., Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993), cited with approval by Ortega, supra at 129; Kry v. Poleschuk, 892 F.Supp. 574, 577 (S.D.N.Y. 1995). The consensus approach in tort cases, where pain and suffering is in issue, is to focus on whether the plaintiff will have a permanent impairment. Rosenboro held as follows:

> Estimating the maximum potential value of unliquidated damage claims is an inexact science at best. In past cases, however, we have recognized that longer-lasting and more severe injuries are more likely to give rise to substantial unliquidated damage awards than short-term, minor ailments. Accordingly, in applying the St. Paul Mercury test, we have found the presence of medical evidence showing that a plaintiff is suffering from a continuing or permanent physical impairment to be an important indicator that a substantial unliquidated damages award could be legally justified.

Rosenboro, supra at 17-18; see also Ortega, supra. In order to meet her burden of proof, a plaintiff may submit affidavits and medical records, and the court may also consider the amounts returned by juries "for injuries similar to" that suffered by the plaintiff in question. Stewart v. Tupperware Corporation, 356 F.3d 335, 339 (1st Cir. 2004).

In this case, the Plaintiff suffered a torn ACL. While the Defendant presumably attempted to minimize the severity of her injury by pointing out in its memorandum that the Plaintiff had had arthroscopic surgery (as opposed to more invasive surgery) to repair it, the fact remains that a torn ACL is a serious injury, regardless of how it is repaired. It is a matter of common knowledge that arthroscopic surgery is becoming increasingly more common as a surgical alternative for all sorts of conditions. The seriousness of a torn ACL is also well known. The sports pages are replete with stories about athletes who have torn their ACLs and the extensive physical therapy that will be required to return them to form. The Plaintiff presumes that most people know someone who has "blown out their knee."

The Plaintiff has incurred special damages of $14,504.94, and has been given a 10% permanent impairment of the knee by her surgeon. Further, she has affirmed that, 3 years post-accident, she is still doing home exercises for her knee, has never been able to return to her pre-injury sports and recreational activities, and that she still has regular pain and physical limitations as a result of the injury. She has also affirmed that she and her husband have postponed having a third child because of the injury.

The case law and reported Rhode Island jury verdicts strongly support a finding that it is indeed not a legal certainty that the claims will not result in a verdict for $75,000 or more. Last year, in Stewart, the First Circuit held that claims of chest and neck pain and emotional trauma, with whole person permanent impairment ratings of 3% and 7%, and unstated special damages (medical bills and lost earnings), met the jurisdictional minimum of $75,000. Stewart, supra at 337, 340. In 1985, the First Circuit held that a plaintiff who had minimal medical expenses of no more than $250 and lost earnings of about $2,000 as a result of a concussion and a 10 month history of headaches, dizziness and shoulder and neck pain met the then jurisdictional minimum

of $10,000. Duchesne, supra at 29. In 1993, the District of Columbia Circuit held that a plaintiff who had minor shoulder and knee injuries and a lumbosacral sprain leading to a 10% permanent impairment of the lower back, with medical bills of $2,880, car repair bills of $807, and lost earnings of $1,828, met the then jurisdictional minimum of $50,000. Rosenboro, supra at 15, 18-19. In 1995, the Southern District of New York held that a plaintiff who had a 10% permanent impairment to his neck who had only 6 months of medical treatment and who only missed 3 days of work, with unstated medical bills, met the then jurisdictional minimum of $50,000. Kry, supra at 576-577. In 1973, the Fifth Circuit held that a plaintiff with a broken ring finger, with minimal medical bills and 9 weeks of lost work (approximately $1,850), met the then jurisdictional minimum of $10,000. Lee v. Yamashita Shinnihon Kisen, 475 F.2d 1251 (5th Cir. 1973).

Recent Rhode Island state jury verdicts also support the Plaintiff's position. Stewart, supra. In 2002, a jury in Kent Court Superior Court (Mansfield v. Shaw's Supermarket, Case No. KC99-0846) awarded $75,000 in damages to a plaintiff who suffered an ankle injury that required arthroscopic surgery. The plaintiff incurred $9,300 in medical bills and $3,600 in lost earnings, and did not suffer a permanent injury. In 1998, a jury in Providence County Superior Court (Carson v. Calderone, Case No. PC94-0648) awarded $103,000 in damages to a plaintiff who tore his ACL and his medial meniscus. He required 2 operations and missed a total of approximately 2 months from work. In 1997, a jury in Providence County Superior Court (Wilkens v. Mimma, Case No. PC93-0713) awarded $100,000 in damages to a plaintiff who tore ligaments in his knee and required arthroscopic knee surgery. The Plaintiff had permanent scarring on his knee.

Accordingly, in considering the case law, reported decisions, and recent Rhode Island state court jury verdicts, it cannot be said that it is a legal certainty that Evelyn Cruz's claim will not result in a $75,000 award. Given that she claims almost $15,000 of special damages, for the Defendant's theory to prevail, this Court would have to find that it is a legal certainty that Mrs. Cruz's pain and suffering is worth less than $60,000, assuming that her claim for special damages is upheld. The law does not allow for such a finding. Duchesne, supra; Rosenboro, supra; Kry, supra; Ortega, supra; Mansfield jury verdict report. Mrs. Cruz's surgeon opined that she has a significant permanent impairment of the knee of 10%, which the Plaintiff has affirmed as being her actual experience. Exhibit A, Affidavit of Evelyn Cruz. Almost 3 years post-surgery, she is still bothered by pain, some stiffness, and unusual popping/giveaway feelings in her knee. It has been 3 years, and she is still unable to return to her pre-injury sporting and recreational activities of volleyball, bowling, jogging and basketball. She is still unable to get down on the floor to play with her young children as she would like. The knee injury interfered with the Plaintiff's joy of pregnancy by causing her to have to worry about her knee giving out due to the extra weight. The Plaintiff is still concerned about this, and this concern has caused her (and her husband) to delay having a third child. Finally, the Plaintiff still has an unsightly surgical scar which has been distressing her greatly for the last 3 years. Given this proof, the Defendant's motion should be denied in its entirety.

III. THIS COURT HAS ADMIRALTY JURISDICTION.

The Plaintiff has alleged that the injury in this case occurred while the Plaintiff was a passenger on a Banana Boat being towed by a motor vessel on navigable waters, in Rhode Island Sound off of Block Island. Complaint. ¶¶5-10, 14. Accordingly, this Court has admiralty jurisdiction over this case pursuant to Article III, §2, of the United States Constitution and 28

U.S.C. §1333. Yamaha Motor Corporation, U.S.A. v. Calhoun, 516 U.S. 199, 206, 116 S.Ct. 619, 623 (1996). It should be noted that the Defendant admitted paragraphs 5-9 of the Plaintiff's Complaint (regarding ownership, operation and control of the vessel in question, as well as the maritime locus of the incident). Defendant's Answer, ¶2. It should also be noted that the Defendant neither admitted, nor denied, paragraphs 10 and 14 of the Complaint. Answer, ¶1.

If this Court should disagree with the Plaintiff, and find that it is a legal certainty that the Plaintiff will not recover in excess of $75,000 in this case, the Plaintiff respectfully requests that the Court permit the Plaintiff to amend her Complaint to allege admiralty jurisdiction, pursuant to Fed.R.Civ.P. 15(a) and 28 U.S.C. §1653. §1653 states: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The First Circuit has held that §1653 "is normally construed liberally so as to avoid dismissals of complaints on technical grounds." Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 24 (1st Cir. 1988). §1653 was enacted to address "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." Mills v. Maine, 118 F.3d 37, 53 (1st Cir. 1997), quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830-831, 109 S.Ct. 2218, 2222 (1989); Bull HN Information Systems, Inc. v. Hutson, 184 F.R.D. 19, 22-23 (D.Mass. 1999), quoting Newman-Green, supra.

The First Circuit has also read Rule 15(a) "to allow amendments 'freely' if it appears possible that plaintiff can correct the jurisdictional defect." Id., citing 3 Moore, Moore's Federal Practice ¶15.10 (2d. ed. 1985); see also Whitmire v. Victus Limited T/A Master Design Furniture, 212 F.3d 885, 888 (5th Cir. 2000) ("In general, a motion for leave to amend should be granted if it would do nothing 'more than state an alternative jurisdictional basis for recovery upon the facts previously alleged.'") (citation omitted).

The circumstances that the Fifth Circuit addressed in Whitmire are almost exactly the same state of affairs that exist in this case. In Whitmire, the plaintiff filed a complaint which alleged violations of a federal statute. Id. at 886. Although diversity jurisdiction also existed at the beginning of the case, Whitmire did not allege diversity jurisdiction in her complaint. Id. at 887. The defendant was later granted summary judgment on Whitmire's federal claims, and Whitmire immediately moved to amend her complaint to allege diversity jurisdiction. Id. The district court denied her motion, and the Fifth Circuit reversed, holding that it was an abuse of discretion to not allow Whitmire to amend her complaint for the reasons stated above. Id. at 887-888, 890.

In this case, admiralty jurisdiction has existed from the inception of the case. The Plaintiff alleged in her Complaint that she was injured while she was a passenger on a Banana Boat being towed by the Defendant's motor vessel on navigable waters, in Rhode Island Sound off of Block Island. Complaint. ¶¶5-10, 14. These allegations are sufficient to invoke admiralty jurisdiction pursuant to Article III, §2, of the United States Constitution and 28 U.S.C. §1333. Thus, a motion to amend, if necessary, would only amend the jurisdictional allegations and not defective jurisdictional facts. Mills, supra; Whitmire, supra at 888; Neely v. Club Med Management Services, 63 F.3d 166, 180 n. 9 (3rd Cir. 1995) (allowing the plaintiff to amend the complaint to allege diversity jurisdiction to supplement his prior allegations of federal question and admiralty jurisdiction).

IV. CONCLUSION

The Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss on the grounds that the Court cannot find and rule that it is a legal certainty that the Plaintiff will

recover less than $75,000 in this matter. Alternatively, if the Court should so find, the Plaintiff requests leave to amend the Complaint to allege admiralty jurisdiction.

Evelyn Cardona Cruz
By her attorneys,

Stephen G. Linder (#0696)
LAW OFFICE OF STEPHEN G. LINDER
155 South Main Street, Suite 303
Providence, RI 02903
401-521-6800

CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was sent this date via first class mail to all counsel of record.

Stephen G. Linder (#0696)
LAW OFFICE OF STEPHEN G. LINDER
155 South Main Street, Suite 303
Providence, RI 02903
401-521-6800

Dated: September 21, 2005