UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EVELYN CARDONA CRUZ,                    :
                    Plaintiff,          :
                                        :
            v.                          :        CA 05-336 S
                                        :
BLOCK ISLAND PARASAIL, INC.,            :
                    Defendant.          :


### REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

    Before the Court is Plaintiff's Motion to Alter or Amend
Judgment (Document ("Doc.") #18) ("Motion to Vacate Judgment" or
"Motion").  The Motion seeks to vacate the judgment which was
entered on August 24, 2006, in favor of Defendant Block Island
Parasail, Inc. ("Defendant"), following an arbitrator's decision
on July 11, 2006.  See Motion at 1; see also Judgment in a Civil
Case (Doc. #16) ("Judgment").  Plaintiff contends that the
Judgment was entered in error because the arbitration was not
conducted under the auspices of the Court's Alternative Dispute
Resolution Plan ("ADR Plan" or "Plan") and that, therefore,
Plaintiff had no obligation to comply with the ADR Plan regarding
a demand for trial de novo following an adverse arbitration
award.  See Memorandum in Support of Plaintiff's Motion to Alter
or Amend Judgment ("Plaintiff's Mem.") at 3.

    The Motion has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons stated herein, I recommend that
the Motion to Vacate Judgment be granted.

### Facts and Travel

    Prior to the Rule 16 Conference held on May 24, 2006,
counsel for Plaintiff and Defendant agreed to submit the case to

non-binding arbitration using Paul Reynolds ("Attorney Reynolds")
as the arbitrator.  See Plaintiff's Mem., Exhibit ("Ex.") A
(Affidavit of Stephen G. Linder) ("Linder Aff."); id., Ex. B
(Affidavit of Edythe C. Warren) ("Warren Aff."); Memorandum in
Support of Defendant's Objection to Plaintiff's Motion to Alter
or Amend Judgment ("Defendant's Mem."), Ex. 3 (Affidavit of Kevin
J. Holley) ("Holley Aff.") ¶ 2.  Defendant's counsel believed
that "the arbitration was being entered into pursuant to the
Court's ADR court-annexed, non-binding arbitration program."
Holley Aff. ¶ 4.  Plaintiff's counsel held the opposite belief.
See Linder Aff.; Warren Aff.

At the Rule 16 Conference, counsel informed District Judge
William E. Smith of their agreement to submit the case to non-
binding arbitration, using Attorney Reynolds as the arbitrator.
Linder Aff.; Warren Aff.; Holley Aff. ¶ 4.  The question of
whether Attorney Reynolds was on the Court's list of neutral
arbitrators was raised.  See id.  According to Plaintiff's
counsel, it was decided that this "question was moot because the
arbitration was to be outside of the Court's purview."  Linder
Aff.; Warren Aff.  Defendant's counsel's recollection, however,
is that counsel for the parties expressed their desire to use
Attorney Reynolds as the arbitrator "even if he was not on the
Court's list of neutral arbitrators," Holley Aff. ¶ 4, and that
Judge Smith advised the parties that they "could use Mr. Reynolds
but that if the case did not resolve through his efforts, we
would still be required to attend a 'mandatory settlement
conference' pursuant to the ADR rules," id.

On June 13, 2006, Attorney Reynolds sent a letter to the
Court's ADR Administrator, Dr. Berry Mitchell ("Dr. Mitchell").
See Defendant's Mem., Ex. 4 (Letter from Reynolds to Mitchell of
6/13/06).  The letter advised Dr. Mitchell that counsel in the
case had asked Attorney Reynold to conduct a non-binding

2

arbitration.  <u>See</u> Defendant's Mem., Ex. 4.  Enclosed with the
letter was a copy of the correspondence that had been sent to
counsel scheduling the matter for hearing.  <u>See id.</u>  The letter
also reflected that Plaintiff's counsel, Stephen G. Linder
("Attorney Linder"), and Defendant's counsel, Kevin J. Holley
("Attorney Holley"), were sent copies of the correspondence.

The arbitration was conducted on July 7, 2006, <u>see</u> Decision
(Doc. #17) at 1, and on July 11, 2006, Attorney Reynolds rendered
a written decision, finding in favor of Defendant, <u>see id.</u> at 5.
Attorney Reynolds sent a copy of the Decision to each party's
counsel, with a cover letter which stated in relevant part:

> Enclosed you will find my decision and bill for
> services rendered in this matter.
>
> As I discussed at the arbitration hearing, I have sent
> a copy of this decision to B[e]rry Mitchell at the United
> States District Court.  I do not know what the
> procedures, if any, you need to engage in with regard to
> the Court concerning my decision.

Defendant's Mem., Ex. 5 (Letter from Reynolds to Warren and
Holley of 7/11/06).

On August 24, 2006, the Judgment was entered.  <u>See</u> Docket.
It was signed by Dr. Mitchell.  <u>See</u> Judgment.  The Judgment
recited that the arbitrator's Decision had been received by the
clerk's office on July 12, 2006, <u>see id.</u>, that no demand for
trial de novo had been "made within the requisite period of time
for filing such demand (30 days from the date of the filing of
the arbitration award by the arbitrator) ...," <u>see id.</u>, and that,
in accordance with the arbitrator's decision, judgment was being
entered in favor of Defendant, <u>see id.</u>; <u>see also</u> ADR Plan at 12[1]

---

[1] The Court cites to the ADR Plan by page number.  The page
numbers correspond to the pagination appearing on the document when it
is accessed through the Court's web site:
http://www.rid.uscourts.gov/adr.asp.

(Trial de Novo); ADR Plan at 10 (Form of Decision and Delivery to the Court and Parties).

Plaintiff filed the instant Motion to Vacate Judgment on August 29, 2006.  See Docket.  Defendant's Objection to Plaintiff's Motion to Alter or Amend Judgment ("Defendant's Objection") was filed on September 13, 2006.  See id.  Plaintiff filed a reply memorandum on September 15, 2006.  See Plaintiff's Reply Memorandum (Doc. #22) ("Plaintiff's Reply").  The Court conducted a hearing on the Motion on October 26, 2006, and thereafter took the matter under advisement.  See Docket.

**Law**

The instant Motion is made pursuant to Fed. R. Civ. P. 59(e).  See Motion at 1.  Rule 59(e) states in its entirety: "Motion to Alter or Amend Judgment.  Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."  Fed. R. Civ. P. 59(e).

"Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992); see also Curtis v. NID PTY, Ltd., 248 F.Supp.2d 836, 837 (S.D. Iowa 2003)("The function of an FRCP 59(e) motion is limited to correcting manifest errors of law or fact or to present newly discovered evidence.")(internal quotation marks omitted); Surcco v. Prasa, 157 F.Supp.2d 160, 171 (D.P.R. 2001)(stating that a motion under Rule 59(e) "must rely on at least one of three grounds: 1) intervening change in controlling law, 2) availability of new evidence not previously available, or 3) need to correct a clear error of law or prevent manifest injustice"); Corretjer Farinacci v. Picayo, 149 F.R.D. 435, 437 (D.P.R. 1993) ("The purpose of a motion to alter or amend a judgment under Rule 59(e) 'is to correct manifest errors of law or to present newly discovered evidence.'")(quoting Committee for First Amendment v.

4

Campbell, 962 F.2d 1517, 1523 (10th Cir. 1992)).

Nevertheless, "any motion that draws into question the correctness of the judgment is functionally a motion under [Fed. R. Civ. P. 59(e)], whatever its label." Norman v. Arkansas Dep't of Educ., 79 F.3d 748, 750 (8th Cir. 1996)(quoting Quartana v. Utterback, 789 F.2d 1297, 1300 (8th Cir. 1986))(alteration in original). "According to the accompanying Advisory Committee Report, the Rule was adopted to 'make[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 450, 102 S.Ct. 1162, 1166 (1982)(quoting Notes of Advisory Committee on 1946 Amendment to Rules)(alteration in original).

## Discussion

It is clear that the parties came away from the Rule 16 Conference with different understandings as to whether the non-binding arbitration to which they had agreed was going to be subject to the requirements of the Court's ADR Plan. See Linder Aff.; Warren Aff.; Holley Aff. ¶ 4. For that reason, the Court finds the opposing affidavits of counsel to be of little assistance in resolving the instant Motion.

Plaintiff makes several arguments in support of her contention that the arbitration was not affiliated with the Court's ADR program. First, the Pretrial Order (Doc. #12) which was issued following the Rule 16 Conference did not address ADR. See Plaintiff's Mem. at 2. Second, the Court did not issue an order referring the case to ADR. See id. at 2, 5. Third, the parties selected the arbitrator themselves without any input from the Court or the ADR Administrator. See Plaintiff's Mem. at 5. Fourth, after the Rule 16 Conference, the parties did not follow the procedure prescribed by the Plan in that they did not submit the name of the arbitrator selected to the ADR Administrator

within ten days of the Conference.  See Plaintiff's Mem. at 5; see also Plan at 9.  Fifth, Plaintiff did not receive any communications from the office of the ADR Administrator advising that the arbitration with Attorney Reynolds was to be under Court auspices.  See Plaintiff's Mem. at 4.  Sixth, there is no evidence that Attorney Reynolds received notice from the ADR Administrator of his designation as a Neutral pursuant to the Plan.  See id.; see also Plan at 9.  Seventh, there is no evidence that Attorney Reynolds filed his acceptance of such designation as required by the Plan.  See Plaintiff's Mem. at 4; see also Plan at 6 ("Upon the selected neutral receiving notice from the Administrator of his/her designation as a neutral, the neutral shall file his/her acceptance of the designation with the Clerk's Office with a copy to the Administrator ....").

In opposing the Motion, Defendant states that the only written confirmation memorializing the type of arbitration chosen by the parties are two letters which Defendant's counsel sent to Plaintiff's counsel on May 18, 2006.  See Defendant's Mem. at 2; id., Ex. 1 (Letter from Holley to Linder and Berg of 5/18/06), Ex. 2 (Letter from Holley to Linder and Berg of 5/18/06).  In the first letter, Defendant's counsel refers to the options available under the Court's ADR Plan and opines that "the court-annexed arbitration option would probably be the most beneficial for this case."  Id., Ex. 1 at 1.  In the second letter, Defendant's counsel suggests that he and Plaintiff's counsel "try to get together ahead of time to see if we can agree on a potential court-annexed arbitrator."  Defendant's Mem., Ex. 2.

Defendant points to the June 13, 2006, letter from Attorney Reynolds to Dr. Mitchell as evidence that the arbitration was being conducted pursuant to the Court's ADR Plan.  See id., Ex. 4.  Defendant also relies upon the July 11, 2006, cover letter from Attorney Reynolds to counsel which accompanied the Decision

6

and advised them that a copy of the Decision was being sent to
Dr. Mitchell.  See Defendant's Mem. at 2; id., Ex. 5.  Defendant
additionally cites the fact that Attorney Reynolds told counsel
at the arbitration hearing that he would be sending a copy of his
decision to Dr. Mitchell.  See id. at 2; id., Ex. 5; Holley Aff.
¶ 3.  Based on these facts, Defendant argued at the hearing on
the Motion that Plaintiff received both oral and written notice
that the Decision was being sent to the ADR Administrator.  See
Tape of 10/26/06 Hearing.  Although not explicitly argued,
Defendant presumably contends that Plaintiff knew (or should have
known) from Attorney Reynolds' statements and actions that the
arbitration was being conducted as part of the Court's ADR
program.

        Lastly, Defendant's counsel also argued at the October 26,
hearing that there would have been no point to the arbitration
unless it was conducted pursuant to the Court's ADR program.  He
suggested that otherwise Defendant would not have agreed to
participate.

        Relative to Defendant's last argument, the Court asked
Attorney Linder at the October 26, 2006, hearing what Plaintiff's
counsel believed was to occur after the Decision had been
rendered.  Attorney Linder responded that nothing was to occur
because neither party had an obligation to accept or reject the
arbitration award.  He indicated that the arbitration had been
undertaken only for the purpose of obtaining a valuation on the
case which the parties could use in their subsequent
negotiations.  The Court finds this explanation difficult to
accept.  The benefit to be derived from submitting the case to
arbitration on such loose terms would hardly seem to justify the
time and money expended in the process.

        On the other hand, the fact that the arbitration may seem to
have been of questionable value unless conducted pursuant to the

Court's ADR Plan does not affirmatively establish that the
arbitration was subject to the Plan's requirements.   After
careful consideration, the Court concludes that the evidence
supporting a finding that the arbitration was conducted pursuant
to the Court's ADR Plan is outweighed by the evidence supporting
the opposite conclusion.

While Defendant is correct that the only written
confirmation memorializing the type of arbitration chosen are the
two letters from its counsel, that circumstance also serves to
highlight the fact that other documentary evidence which should
exist does not.   Specifically, there is no mention of arbitration
or of ADR in the Pretrial Order which was issued following the
Rule 16 Conference even though the parties' intention to submit
the case to non-binding arbitration was discussed at the
Conference.   Most significantly, there is no order of referral, a
document which the Plan specifically contemplates being entered.
See Plan at 7 (Confidentiality in ADR Communications)("The Clerk
will file and include in the Court's record only the order
referring a case to ADR and other routine ADR scheduling and
proceeding notices.").   Indeed, there is no reference of any kind
to ADR in the Docket.   See Docket.   There is not even any mention
of the arbitration until August 24, 2006, the date the Judgment
is entered.   See id.   Yet, the Plan clearly provides that the
order of referral and "other routine ADR scheduling and
proceeding notices," Plan at 7, will be filed in the record.   The
Court interprets this provision to mean that the notices will be
filed as they are issued and not after the ADR option has been
completed.   Thus, although Attorney Reynolds sent Dr. Mitchell a
copy of the correspondence which had been sent to counsel
scheduling the arbitration hearing, see Defendant's Mem., Ex 4,
this notice was not filed in the record.   Equally, if not more,
important, Attorney Reynolds' letter, which arguably could be

8

viewed as his "acceptance of the designation," Plan at 6
(Scheduling ADR Conferences),[2] was not filed with the Clerk's
Office as required by the Plan, see id.

The record also does not reflect that Dr. Mitchell
"notif[ied]," Plan at 9 (Notification of Appointment), Attorney
Reynolds of his selection as the arbitrator.  While Attorney
Reynolds communicated with Dr. Mitchell by telephone and letter,
these communications do not reflect that Dr. Mitchell made the
required notification.  See Defendant's Mem., Ex. 4.  Indeed, it
is improbable that Dr. Mitchell would have done so because the
parties had agreed upon Attorney Reynolds prior to the Rule 16
Conference, see Linder Aff.; Warren Aff.; Holley Aff. ¶ 2, and it
appears that counsel contacted Attorney Reynolds prior to
Attorney Reynolds communicating with Dr. Mitchell, see
Defendant's Mem., Ex. 4.

The fact that Attorney Reynolds is not a member of the
Court's ADR Panel also weighs substantially against a finding
that the arbitration was conducted pursuant to the Court's ADR
Plan.  The use of a non-Panel member to conduct an arbitration
pursuant to the Plan is, in the view of this Magistrate Judge, a
significant deviation from the Plan's prescribed procedures and
would seemingly require approval by the Court, presumably in
writing.  While counsel discussed the use of Attorney Reynolds as

---

[2] The Plan provides in relevant part:

B. Scheduling ADR Conferences

Upon the selected neutral receiving notice from the
Administrator of his/her designation as a neutral, **the neutral
shall file his acceptance of the designation with the Clerk's
Office with a copy to the Administrator,** and shall promptly
schedule the first meeting with the parties within 30 days,
unless otherwise directed by the Court ....

Plan at 6 (bold added).

an arbitrator with Judge Smith and Judge Smith indicated that the
parties could proceed with their intention to have a non-binding
arbitration using Attorney Reynolds, such discussion and consent
are insufficient to persuade this Magistrate Judge that Judge
Smith intended to make the arbitration part of the Court's formal
ADR process.  Were it otherwise, its seems likely that Judge
Smith would have issued an order of referral or made some
reference in the Pretrial Order to the arbitration and the
parties' use of a non-Panel member.

Finally, the Court agrees with Plaintiff that if the case
had been referred for arbitration pursuant to the Plan, a person
reading the Docket, or at the very least reviewing the filings in
the case, should be able to discern such fact from the
information contained therein.  Here such action is not reflected
in the record prior to entry of the Judgment.

In summary, the Court concludes that the weight of the
evidence is against finding that the arbitration was conducted as
part of the Court's ADR process.  Accordingly, I find that the
Judgment was entered in error and that the Motion to Vacate
Judgment should be granted to prevent "manifest injustice."
Surcco v. Prasa, 157 F.Supp.2d 160, 171 (D.P.R. 2001); see also
White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445,
450, 102 S.Ct. 1162, 1166 (1982)(stating that the district court
possesses the power to rectify its own mistakes in the period
immediately following the entry of judgment).  I so recommend.

### Conclusion

For the reasons stated above, I recommend that Plaintiff's
Motion to Vacate Judgment be granted.  Any objections to this
Report and Recommendation must be specific and must be filed with
the Clerk within ten (10) days of its receipt.  See Fed. R. Civ.
P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections
in a timely manner constitutes waiver of the right to review by

10

the district court and of the right to appeal the district
court's decision.   See United States v. Valencia-Copete, 792 F.2d
4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co.,
616 F.2d 603, 605 (1st Cir. 1980).


DAVID L. MARTIN
United States Magistrate Judge
November 1, 2006

11